IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFERY LOVELL STANTON,
      Petitioner,

vs.                             Case No.:  3:16cv102/MCR/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 6, 7).  Respondent filed an answer and relevant portions of the state court record (ECF No. 18).  Petitioner filed a reply (ECF No. 20).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 18).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2011-CF-5361, with one count of trafficking in hydrocodone (28 grams or more but less than 30 kilograms) within 1,000 feet of a community center, in violation of Florida Statutes §§ 893.13(1)(c)1., 893.135(1)(c)1.c. (Ex. A at 1).  The offense conduct occurred on July 8, 2011 (*see id.*).  Following a bench trial on February 5, 2013, Petitioner was found guilty of trafficking in 28 grams or more of hydrocodone and sentenced to a mandatory term of twenty-five (25) years in prison, pursuant to Florida Statutes § 893.135(1)(c)1.c. (Ex. A, Trial Transcript; *see also* Ex. A at 28–37).[2]  The trial court did not make a finding that the

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 18).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

[2] Petitioner was separately charged in Escambia County Case No. 2011-CF-5363 with another count of drug trafficking, arising from offense conduct that occurred on September 14, 2011 (*see* ECF No. 18 at 2).  *See* Stanton v. Secretary, Case No. 3:15cv413/LAC/GRJ, Report and Recommendation, ECF No. 25 (N.D. Fla. Jan. 31, 2017).  A jury convicted Petitioner in that case on November 28, 2012.  *See id.*  The § 2254 petition in the instant case challenges only the judgment in Escambia County Case No. 2011-CF-5361 (*see* ECF No. 6).

trafficking occurred within 1,000 feet of a community center, because the State did not present evidence on the issue at trial (*see* Ex. A, Trial Transcript, p. 70). Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-859 (Ex. B). During the pendency of the appeal, Petitioner, through counsel, filed a motion to correct illegal sentence, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (*id.* at 52–68). The state circuit court summarily denied the motion on July 2, 2013 (*id.* at 69–70). The First DCA affirmed the judgment per curiam without written opinion on November 19, 2013, with the mandate issuing December 5, 2013 (Exs. E, F). <u>Stanton v. State</u>, 146 So. 3d 29 (Fla. 1st DCA 2013) (Table).

On June 25 and 27, 2014, Petitioner filed three motions for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Exs. G, H, I). Petitioner subsequently filed a motion to amend, without specifying which of the three motions he sought to amend (Ex. Y). On August 18, 2014, the circuit court dismissed the three post-conviction motions because none of them included an oath which complied with the requirements of Rule 3.850(c) and (n) (*id.*). The dismissal was without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.*). Petitioner filed two more Rule 3.850 motions on August

25, 2014 (Exs. K, L).   On October 23, 2014, the circuit court struck the motions as insufficiently pled, without prejudice to Petitioner's filing an amended motion within sixty (60) days (Ex. M).  Petitioner filed an amended Rule 3.850 motion on December 22, 2014 (Ex. N at 6–29). The circuit court summarily denied the motion on March 2, 2015 (*id.* at 68–74).  Petitioner appealed the decision to the First DCA, Case No. 1D15-1396 (Ex. O).  The First DCA affirmed per curiam without written opinion on June 23, 2015, with the mandate issuing August 17, 2015 (Exs. P, S).  Stanton v. State, 171 So. 3d 707 (Fla. 1st DCA 2015) (Table).

On March 20, 2015, while the post-conviction appeal was pending, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D15-1321, alleging ineffective assistance of appellate counsel (Ex. V).  The First DCA dismissed the petition on April 8, 2015 (Ex. W).  Petitioner sought review in the Supreme Court of Florida, Case No. SC15-866 (*see* Ex. X).  The supreme court dismissed the petition for review for lack of jurisdiction on May 8, 2015 (*id.*).  Stanton v. State, 171 So. 3d 120 (Fla. 2015) (Table)

On March 26, 2015, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D15-1470, alleging ineffective assistance of appellate counsel

(Ex. T).  The First DCA dismissed the petition on procedural grounds on June 10, 2015 (Ex. U).

Petitioner filed the instant federal habeas action on March 6, 2016 (*see* ECF No. 1 at 12).

## II.   STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the <u>Williams</u> framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. <u>Thaler v. Haynes</u>, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); <u>Woods v. Donald</u>, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the

federal habeas court must independently consider the merits of the petitioner's claim. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. <u>Williams</u>, 529 U.S. at 409; *see* <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." <u>Harrington</u>, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

<u>Woods</u>, 135 S. Ct. at 1376 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti</u>, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this

standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>,

---

[3] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39

(1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal

judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.");

---

[5] In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[6]  *Id.*  Second, the state court's decision

on the procedural issue must rest entirely on state law grounds and not be intertwined

with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be

adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must

be firmly established and regularly followed, that is, not applied in an arbitrary or

unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice

or a fundamental miscarriage of justice in order for the federal habeas court to reach

the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

exist, an external impediment, whether it be governmental interference or the

reasonable unavailability of the factual basis for the claim, must have prevented

petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct.

1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106

S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception,

the petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.* Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; *see also* House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

## IV.    PETITIONER'S CLAIMS

    A.    Ground One: "Whether the lower tribunal lacked subject matter jurisdiction and omitted essential element in charging information document [sic]."

Petitioner alleges the Escambia County Sheriff's Office and the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") set up a fictitious pawn shop within 1,000 feet of a Salvation Army as part of a "sting" operation (ECF No. 6 at 6; ECF No. 7 at 3–8).[7]  Petitioner alleges the agencies deliberately located the pawn shop within 1,000 feet of a community center (a Salvation Army) to invoke enhanced penalties under Florida Statutes § 893.13(1)(c) (*id.*).  Petitioner alleges the agencies advertised the pawn shop by distributing flyers to the community, which advertised, "Anything for a Buck.  No questions asked." (*id.*).  Petitioner alleges the agencies had not obtained business licenses or permits and thus were operating illegally (*id.*).  Petitioner alleges the "sting" resulted in arrests of seventy-five (75) citizens, including Petitioner, for crimes involving guns and drugs (*id.*).

Petitioner claims that the trial court lacked subject matter jurisdiction to try and convict him, because the State omitted elements from the charging document.  The precise nature of Petitioner's arguments are somewhat difficult to construe.  Petitioner claims that the State charged him with "knowingly" selling a controlled substance, but the prosecutor later argued that it was not required to prove that Petitioner knew the illicit nature of the substance (ECF No. 7 at 3–4, 6).  Petitioner also alleges the

---

[7] The page references used in this Report reflect the page numbers automatically assigned by the court's electronic docketing system rather than those the parties may have assigned.

Case No.:  3:16cv102/MCR/EMT

charging document "omitted an element" by failing to allege that law enforcement solicited him to commit a crime by distributing the flyers advertising the pawn shop, which he claims was not operating legally (*id.* at 4–7). Petitioner additionally alleges the State charged that the offense occurred at a location within 1,000 feet of a community center, but the State did not present evidence of this element at trial (*id.* at 7). Petitioner characterizes these three issues as flaws in the charging document, and contends the alleged defects deprived the trial court of subject matter jurisdiction (*id.*).

Respondent contends Ground One does not present a federal claim, because Petitioner does not explain how the charging document was so defective it deprived the trial court of jurisdiction (ECF No. 18 at 7–9). Therefore, the claim is not cognizable in a § 2254 action (*id.*). Respondent additionally contends that even if the issue presented a federal question, it is unexhausted, because Petitioner did not present it on direct appeal (*id.* at 9–8). Respondent contends that notwithstanding the procedural default, the claim is without merit, because the charging document complied with all of the requirements of the Florida Rules of Criminal Procedure (*id.* at 7–8).

Petitioner appears to concede that he did not present this claim on direct appeal of his conviction, but he contends the failure to do so was caused by appellate counsel's ineffectiveness (*see* ECF No. 6 at 6). Petitioner also claims he presented the claim to the state courts in his Rule 3.850 motion and his appeal of the circuit court's denial of his motion (*see id.*; *see also* ECF No. 20 at 2–4).

Upon review of the state court record, it appears that the only remotely similar claim that Petitioner properly presented to the state courts was a due process challenge to Florida's drug trafficking statute on the ground that it unconstitutionally imposed a felony punishment for a "strict liability" offense by not requiring the State to prove that the defendant knew of the illicit nature of the drug he or she trafficked (*see* Exs. B, D). Petitioner presented this issue on direct appeal (Ex. B). The First DCA rejected the claim without discussion (Ex. E). For the reasons articulated by the Eleventh Circuit in Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348, 1354–55 (11th Cir. 2012),[8] the undersigned concludes that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to federal relief on this claim.

---

[8] In Shelton, the Eleventh Circuit held that the Florida Fifth District Court of Appeal did not unreasonably apply clearly established federal law, as determined by the United States Supreme Court, by upholding Florida Statute § 893.101, which partially eliminated the mens rea requirement for state drug offenses, against the petitioner's due process challenge. 691 F.3d at 1354–55.

Neither of the remaining two aspects of Ground One (i.e., the charging document "omitted an element" by failing to allege that law enforcement solicited him to commit a crime by distributing the flyers advertising a pawn shop that was not operating legally, and the charging document charged that the offense occurred within 1,000 feet of a community center, but the State did not present evidence of this element at trial) was presented to the state court on direct appeal or in Petitioner's Rule 3.850 motion (*see* Ex. B, Ex. N at 6–29).[9]  Therefore, both of these claims are procedurally defaulted.

Petitioner appears to assert ineffective assistance of appellate counsel ("IAAC") as cause to excuse the procedural default.  However, Petitioner did not present an IAAC claim related to either of these issues to the state courts.  *See* Murray, 477 U.S. at 488 (although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts).  In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which

---

[9] The only other issue presented on direct appeal was a claim of trial court error with respect to the admission of the hydrocodone pills into evidence over defense counsel's "chain of custody" objection, because a discrepancy in the weight of the pills while they were in the custody of law enforcement agents suggested tampering (Ex. B at 10–11).  In Petitioner's amended Rule 3.850 motion, he presented only claims of ineffective assistance of trial counsel (*see* Ex. N at 6–29).

the appeal was taken. *See* Fla. R. App. P. 9.141(d); <u>Davis v. State</u>, 875 So. 2d 359, 372 (Fla. 2003).

Here, Petitioner did not present the state court with a claim of IAAC based upon appellate counsel's failure to argue the alleged defects in the charging document or counsel's failure to challenge the trial court's subject matter jurisdiction. Instead, Petitioner argued only that his appellate counsel was ineffective for failing to advise him that he could appeal his conviction to the United States Supreme Court (*see* Ex. V). Petitioner thus cannot establish cause for his procedural default of the unexhausted aspects of Ground One.

Moreover, even if the unexhausted arguments were not procedurally defaulted and foreclosed from federal review, it is clear that Petitioner is not entitled to relief on the merits. *See* 28 U.S.C. § 2254(b)(2) (habeas relief may be denied notwithstanding the petitioner's failure to exhaust). Under the Sixth Amendment, a defendant has a right to reasonable notice of the charge against him. *See* <u>In re Oliver</u>, 333 U.S. 257 (1948) (a defendant's right to reasonable notice of the charge against him is applied to the states through the Fourteenth Amendment). However, the sufficiency of a state indictment or information is not a matter for federal habeas corpus relief unless it can be shown that the indictment or information is so defective that the convicting court

had no jurisdiction.  *See* <u>Heath v. Jones</u>, 863 F.2d 815, 821 (11th Cir. 1989); <u>Branch v. Estelle</u>, 631 F.2d 1229 (5th Cir. 1980).[10]

Here, Petitioner has made no showing that the information was so defective that the state court lacked jurisdiction.  "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  <u>Cole v. Arkansas</u>, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948); <u>Markham v. United States</u>, 160 U.S. 319, 16 S. Ct. 288, 40 L. Ed. 441 (1895); *see also* <u>Perley v. State</u>, 947 So. 2d 672, 674 (Fla. 4th DCA 2007); <u>Rogers v. State</u>, 963 So. 2d 328, 332 (Fla. 2d DCA 2007).  For a defective information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction.  *See* <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction.").

---

[10] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

Under Florida law, the state circuit courts have jurisdiction over all felony charges.  *See* Fla. Stat. § 26.012(2)(d).  "An information must allege each of the essential elements of a crime to be valid."  State v. Dye, 346 So. 2d 538, 541 (Fla.1977).  "A criminal information is fundamentally defective 'only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy.'"  Perley, 947 So. 2d at 674 (citations omitted).

Rule 3.140 of the Florida Rules of Criminal Procedure provides:

**(b) Nature of Indictment or Information**.  The indictment or information on which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.
. . . .
**(d) The Charge**.

**(1) Allegation of Facts; Citation of Law Violated**.  Each count of an indictment or information on which the defendant is to be tried shall allege the essential facts constituting the offense charged.  In addition, each count shall recite the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.  Error in or omission of the citation shall not be ground for dismissing the count or for a reversal of a conviction based thereon if the error or omission did not mislead the defendant to the defendant's prejudice.
. . . .
**(o) Defects and Variances**.  No indictment or information, or any count thereof, shall be dismissed . . . on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any

cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(o).

Here, the information cited the state statutes that were violated, tracked the language of those statutes, incorporated the elements of the offense of trafficking in illegal drugs, recited the date of the offense, identified Petitioner, and alleged that the offense occurred within 1000 feet of a community center, identifying both the center and the address. The fact that the State abandoned the enhanced penalty by failing to present evidence that the offense was committed with 1,000 feet of a community center did not render the information defective or deprive Petitioner of due process, because the trial court did not impose the enhanced penalty. Further, the fact that Petitioner's trafficking charge was the product of a sting operation was not an essential element of the crime or an essential fact constituting the trafficking offense, thus the information's failure to include that fact did not constitute a defect or deprive the trial court of subject matter jurisdiction.

In sum, the information was not so vague, indistinct, or indefinite as to mislead Petitioner, impede the preparation of his defense, or expose him to substantial danger

of a new prosecution for the same offense; therefore, the state court did not lack subject matter jurisdiction to try and convict him. *See, e.g.*, Heath, 863 F.2d at 821 ("The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. That is not the case presented here. An examination of the indictment . . . shows that it incorporated the elements of the offense of armed robbery, named the complaining witness and sufficiently described the circumstances of the alleged robbery. The indictment was not fatally defective, for it adequately informed Heath of the charge he was called upon to defend, and the state trial court was not deprived of jurisdiction."). Petitioner is not entitled to federal habeas relief on Ground One.

      B.     <u>Ground Two: "Whether the discovery violation/Giglio/Napue violations resulted in fraud upon the court."</u>

                <u>Ground Three: "This is the extraordinary case worthy of establishing the factual benchmark of 'gateway' innocence in this Circuit."</u>

Grounds Two and Three are interrelated. Petitioner alleges his conviction was obtained by fraud, deceit, and "false evidence" on the part of law enforcement, and specifically Deputy Gilmore (ECF No. 6 at 7, 9; ECF No. 7 at 8–20). Petitioner also appears to claim that Deputy Gilmore provided false information in the probable cause affidavit supporting the trafficking charge (ECF No. 6 at 7).

Petitioner appears to allege that law enforcement's distributing flyers advertising the unlicensed pawn shop, and Deputy Gilmore's posing as a pawn shop employee and leading Petitioner to believe that Petitioner's selling his prescription pills was permissible, constituted fraud, deceit, and "false evidence."  Petitioner alleges the trafficking charge in the instant case, which alleged that Petitioner sold Deputy Gilmore hydrocodone pills on July 8, 2011, arose from events that occurred on April 20, 2011.  Petitioner alleges prior to that date, law enforcement distributed flyers stating, "Anything for a Buck.  No questions asked."  Petitioner alleges the flyers "ensnared" him to enter the fictitious pawn shop on April 20, 2011.

Petitioner alleges he entered the pawn shop on April 20, 2011, with items of jewelry he intended to pawn, and also carrying a pill bottle containing his prescription medication.  Petitioner alleges a videotape shows him standing behind Mr. Kevin Sealey and watching as Sealey sold an illegal substance to Deputy Gilmore.  Petitioner alleges the videotape then shows Petitioner approach the counter.  Petitioner alleges the videotape shows Gilmore signal Petitioner to approach the counter to "induce" him to sell his prescription pills.  Petitioner alleges the videotape shows only a drug transaction between Gilmore and Kevin Sealey, not Petitioner.  Petitioner alleges Gilmore signed a sworn affidavit stating that on April 20, 2011, Petitioner approached

Gilmore and stated he had hydrocodone pills he wanted to sell (*see* ECF No. 7-1 at 77–79, Affidavit of Escambia County Sheriff's Deputy Jason Donald Gilmore). Petitioner alleges both he and Kevin Sealey were charged in Case No. 2011-CF-5345 with drug offenses relating to April 20, 2011.[11]  Petitioner alleges Gilmore's conduct on April 20, 2011, led him to believe that selling his pills to Gilmore was permissible.

Petitioner alleges he did not, and could not have, discovered the "illegal tactics" of law enforcement until after his conviction, when the federal Department of Justice investigated the legality of the "Anything for a Buck" sting operation.   Petitioner contends the investigation of the sting operation is new evidence which establishes his actual innocence of the drug trafficking charge.   Petitioner submitted copies of three news articles, dated February 21 and 22, 2014, which reported that the Department of Justice was investigating the role of the ATF in the "Anything for a Buck" sting, as well as three other stings operations in other states, for "possible systemic deficiencies" (*see* ECF No. 7-1 at 73–76).   Specifically with regard to the "Anything for a Buck" sting, the reports state that the Department was investigating reports that

---

[11] According to information available on the public docket of the Escambia County Clerk of Court, Petitioner was the only defendant in Case No. 2011-CF-5345.  Kevin Sealey was charged in two other cases, Case Nos. 2011-CF-5382 and Case No. 2011-CF-5383, with sale of marijuana within 1,000 feet of a "special area."  In both cases, Mr. Sealey was arrested on November 2, 2011, and charged on November 22, 2011.  Mr. Sealey entered no contest pleas in both cases on August 21, 2012, and was sentenced to concurrent terms of two (2) years of probation on September 11, 2012.  Petitioner's trial in the instant case was months later, on February 5, 2013.

ATF knowingly recruited a convicted felon to work in the pawn shop to increase the number of arrests of customers who sold him a gun knowing that he was a convicted felon (*id.*).  The reports state that the Department was also investigating reports that in the course of the sting operations, ATF (1) used mentally disabled people to promote the pawn shop and then arrested them for their work, (2) intentionally located the sting operations near schools and churches to increase the arrest numbers and penalties, and (3) intentionally attracted juveniles with free video games and alcohol (*id.*).

Additionally, Petitioner alleges that on February 4, 2014, the Florida Department of Law Enforcement ("FDLE") arrested former FDLE crime laboratory chemist Joseph Graves for grand theft and twelve counts of tampering with and fabricating evidence, based upon Graves' stealing prescription pills while processing evidence in drug cases (ECF No. 20 at 5).  Petitioner alleges Graves was subsequently charged with drug trafficking (*id.*).  Petitioner submitted several news articles, dated February to June of 2014, reporting Graves' arrest and charges (ECF No. 20-1 at 78–89).

With regard to exhaustion, Petitioner asserts he presented Ground Two (the Giglio claim) in his Rule 3.850 motion (ECF No. 6 at 8), but he also states he did not

exhaust Ground Two due to ineffectiveness of his trial counsel and appellate counsel (*id.* at 7). Similarly, with respect to Ground Three (the "innocence" claim), Petitioner states he presented it to the state courts in his state habeas petition alleging IAAC (ECF No. 20 at 9), but he also states he did not exhaust Ground Three due to the ineffectiveness of his trial counsel and appellate counsel (ECF No. 6 at 10). Additionally, Petitioner argues he is entitled to review of both claims through the "actual innocence" gateway, based upon the "newly discovered evidence" of the Department of Justice's investigation of the sting, and the prosecution of Mr. Graves. Petitioner asserts he could not have discovered the "illegal" tactics by government officials until after his trial, because the Department of Justice's investigation was not reported until 2014, which was after his conviction.

Respondent argues that Ground Two is vague and fails to state a claim for relief, because Petitioner failed to specifically identify any false statement in Deputy Gilmore's probable affidavit (ECF No. 18 at 10). Respondent additionally argues the claim is unexhausted (*id.* at 10–11). Respondent contends Petitioner should have presented the claim on direct appeal, but he did not do so (*id.*). Respondent further contends that Petitioner did not present a claim of ineffective assistance of trial

counsel ("IATC") related to the alleged <u>Giglio</u> violation in his Rule 3.850 motion or in his post-conviction appellate brief (*id.*).

With respect to Ground Three, Respondent contends the claim is insufficiently pled (ECF No. 18 at 11–14). Respondent contends that Petitioner's allegations regarding the falsity of Deputy Gilmore's affidavit when compared to the videotape of the transaction of April 20, 2011, do not suggest "new evidence," but simply urge the court to re-weigh the evidence available at the time of trial (*id.*). Respondent also contends that the news reports of the investigation into ATF do not establish wrongdoing on the part of the State, and whatever their merit, the reports do not undermine confidence in the verdict at issue in Petitioner's case (*id.*). Respondent contends Petitioner simply has not shown the existence of new evidence showing he is factually innocent of the trafficking charge in Case No. 2011-CF-5361 (the judgment at issue in this habeas case) (*id.*).

Turning first to Petitioner's <u>Giglio</u> claim, the claim is without merit notwithstanding any exhaustion issues. "<u>Giglio</u> error, a species of <u>Brady [v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) ] error, occurs when the undisclosed evidence demonstrates that the prosecution's case included perjured

testimony and that the prosecution knew, or should have known, of the perjury." Ford v. Hall, 546 F.3d 1326, 1331 (11th Cir. 2008) (emphasis added).

To the extent Petitioner's Giglio claim is based upon inconsistencies between Deputy Gilmore's trial testimony and statements in his probable cause affidavits and events captured on videotapes, Petitioner cannot show a Giglio violation. A Giglio claim must be based upon evidence that was undisclosed to the defense at the time of trial. According to the state court record in this case, and the information available from the state clerk of court's public docket in Case No. 2011-CF-5345, Petitioner was arrested and charged in both cases on the same day—he was arrested in both cases on November 2, 2011, and charged on November 23, 2011 (Ex. A at 1, 3–5). Petitioner was represented by the same defense attorney in both cases. In each case, the probable cause affidavit was part of the public docket. Discovery was conducted in both cases. Petitioner has not alleged, let alone shown, that Deputy Gilmore's probable cause affidavits, any videotapes of Petitioner's visits to the pawn shop, or any facts concerning Petitioner's interactions with Gilmore from April 11, 2011 through July 8, 2011, were unknown by the defense at the time of Petitioner's trial in this case. Therefore, to the extent Petitioner's Giglio claim is based upon allegedly false testimony of Deputy Gilmore, this aspect of Petitioner's claim is without merit.

Additionally, the information concerning the arrest of the former FDLE chemist Joseph Graves does not suggest that false evidence was submitted in Petitioner's case, because Petitioner has not alleged or shown that Graves' conduct affected the evidence in his case. At Petitioner's trial, Carol Debruhl testified that she was a crime laboratory technician employed in the FDLE's Evidence Intake Section of the Pensacola Regional Operation Center (Ex. A, Trial Testimony pp. 55–58). Ms. Debruhl testified that on July 12, 2011, she received from the Escambia County Sheriff's Office a sealed manila envelope which was described as containing 50 hydrocodone pills with a total sealed weight of 37.3 grams (*id.*). Ms. Debruhl testified that she labeled the envelope with FDLE No. 20110203215 and placed it into a vault (*id.*).

Michelle DePaola testified that she was a crime laboratory analyst in the Chemistry Section of the FDLE (Ex. A, Trial Transcript pp. 36–53). Ms. DePaola testified that she received a sealed manila envelope marked with FDLE No. 20110203215 (*id.*). She testified that she unsealed the envelope, and it contained a sealed plastic bag containing 50 white tablets (*id.*). Ms. DePaola testified that she examined the manila envelope and the plastic bag for signs of tampering and observed none (*id.*). Ms. DePaola testified that she analyzed ½ of one of the 50 pills and

determined that the pills contained hydrocodone (*id.*). She testified that she weighed the pills without the packaging, and they weighed 35.7 grams (*id.*). Ms. DePaola testified that after testing, she returned 49 ½ pills to both layers of packaging, resealed them, and submitted them back into the evidence "chain of custody" at the FDLE laboratory (*id.*). Ms. DePaola testified that she prepared a report contemporaneously with her testing, and her report was admitted into evidence (Ex. A at 51). At the request of the defense (specifically, Petitioner), Ms. DePaola opened the packaging and weighed the 49 ½ pills on a scale supplied by the Sheriff's Office, which was a different scale than DePaola used when she analyzed the pills (Ex. A, Trial Transcript, pp. 49–52). Ms. Depaola testified that the 49 ½ pills weighed 35 grams (*id.*).

Petitioner has not shown that the "new evidence," that former FDLE chemist Mr. Graves tampered with and stole drugs from the FDLE laboratory, affected any of the evidence submitted at Petitioner's trial, let alone suggested that any of the evidence was false. Indeed, Petitioner has not shown that Mr. Graves' arrest undermined, in any way, Petitioner's conviction of trafficking in 28 grams or more but less than 30 kilograms of hydrocodone.

The same is true of the news reports of the Department of Justice's investigation into the sting operations in which the ATF was involved. Petitioner has

not shown that any of the cited improper circumstances (i.e., hiring a convicted felon to induce illegal gun sales, taking advantage of mentally disabled people, and attracting juveniles with free video games and alcohol) were relevant to the circumstances of Petitioner's selling 50 hydrocodone pills to Deputy Gilmore on July 8, 2011. Further, although intentionally locating the sting operation near the community center to increase the penalties was initially relevant to Petitioner's case (since Petitioner was charged with the enhanced penalty), this circumstance did not ultimately affect Petitioner's conviction or sentence because the State declined to pursue the enhanced penalty, and the court did not impose it.

In sum, Petitioner has not shown that Deputy Gilmore provided false testimony with respect to the trafficking charge in this case. Additionally, Petitioner has not shown that the Department of Justice's investigation of practices employed by the ATF during the sting operations in which it was involved, or the arrest of a former FDLE chemist, supports a claim of actual innocence or otherwise demonstrates that a fundamental miscarriage of justice occurred with respect to his trafficking conviction in this case. Petitioner is not entitled to federal habeas relief on Ground Two or Ground Three.

     C.    <u>Ground Four: "Whether governmental officials misleading a person into violation of the law renders [sic] entrapment by estoppel."</u>

Ground Five:  "Trial counsel failure to raise entrapment defense and prescription defense."

Grounds Four and Five are interrelated.  Petitioner contends he had two valid defenses to the trafficking charge, entrapment and a "prescription" defense (ECF No. 6 at 11, 14; ECF No. 7 at 21–30).  Petitioner claims that trial counsel was ineffective for failing to present these defenses, and the trial court erred by failing find that the defense of entrapment precluded Petitioner's conviction (ECF No. 6 at 14; ECF No. 7 at 26).

In addition to Petitioner's prior allegations relating to his first encounter with Deputy Gilmore at the pawn shop on April 20, 2011 (that he entered the pawn shop with Kevin Sealey; that Petitioner was carrying his bottle of prescription pills when he entered; that Petitioner was standing behind Sealey when Sealey sold Gilmore an illegal substance; and that Gilmore then signaled Petitioner to approach the counter and asked if Petitioner would sell him some of his pills (ECF No. 7 at 8– 9, 14–15, 17)), Petitioner includes additional factual allegations which he contends establish an entrapment defense.  Specifically, Petitioner alleges that on April 20, 2011, Mr. Sealey approached Gilmore and provided pills to Gilmore, and then Gilmore "ordered Petitioner to count the pills which codefendant placed on the counter" (ECF No. 7 at

21).[12]  Petitioner alleges on May 4, 2011, he called the pawn shop, and Gilmore told

him that selling his prescription medication was permissible and then "induced"

Petitioner to come to the pawn shop and sell him more prescription medication (*id.*).

Petitioner also alleges Gilmore told him that the pawn shop would buy anything, with

no questions asked (*id.*).  Petitioner alleges on May 10, 2011, Gilmore called him and

told him to sell him more prescription pills, so Petitioner went to the pawn shop and

sold Gilmore 30 tablets (*id.* at 21–22).  Petitioner alleges this pattern continued on

May 11, 2011, May 23, 2011, June 7, 2011, June 21, 2011, July 7, 2011, July 8, 2011,

July 21, 2011, and September 14, 2011, with Petitioner selling Gilmore different

quantities of hydrocodone on each of those dates (*id.* at 22).[13]  Petitioner alleges that

at trial, Deputy Gilmore was asked whether he called Petitioner to come to the pawn

---

[12] The truth of this allegation is undermined by the fact that the illegal substance which Mr. Sealey was charged with selling was marijuana, not pills.

[13] Petitioner states each of those sales resulted in a trafficking charge (ECF No. 7 at 21). Petitioner was convicted by a jury on November 28, 2012, in Case No. 2011-CF-5363, for the charge stemming from the sale of September 14, 2011.  At the conclusion of Petitioner's bench trial in the instant case, on February 5, 2013, the parties discussed Petitioner's remaining nine pending criminal cases (Ex. A, Trial Transcript, pp. 72–74).  The prosecutor indicated that a decision with regard to the prosecution of those cases would be made "by the end of this week" (*id.*).  The state court's public docket indicates that on February 12, 2013, the State filed a nolle prosequi in all of Petitioner's remaining nine pending cases, including Case No. 2011-CF-5345 (relating to the April 20, 2011 sale), Case Nos. 2011-CF-5354–5360, and Case No. 2011-CF-5362.

shop, and Gilmore responded, "I may have talked to him on the phone. If I talked to him, he called me." (*id.*).[14]

Petitioner claims that his conviction for trafficking on July 8, 2011, supported a prima facie showing of the defense of "entrapment by estoppel," because Deputy Gilmore misled and "induced" him to sell his prescription pills. Petitioner also claims he had a valid defense based upon the fact that he had a prescription for the pills he sold Gilmore. Petitioner states he presented Grounds Four and Five in his post-conviction motion (ECF No. 6 at 11; ECF No. 20 at 11–13).

Respondent contends that to the extent Petitioner asserts federal due process claims based upon his eligibility for an entrapment by estoppel defense and a prescription defense, the claims are unexhausted, because Petitioner did not present them on direct appeal or in his Rule 3.850 motion (ECF No. 18 at 14–21). Respondent argues that Petitioner's IATC claim based upon counsel's failure to present entrapment and prescription defenses are without merit (*id.*). Respondent contends that because Petitioner did not know he was dealing with a government agent (due to the fact that it was an undercover sting operation), the defense of "entrapment by estoppel," as well as the "official misleading" and "public authority" defenses

---

[14] According to the trial transcript, Deputy Gilmore's actual testimony was, "I don't recall ever calling him. He usually called me, several times." (Ex. A, Trial Transcript, pp. 18–19).

recognized in Florida, were unavailable to Petitioner (*id.*). Similarly, because Petitioner's offense was based upon the sale of, rather than the possession of, a controlled substance, the prescription defense was not available to him as a matter of Florida law (*id.*). Respondent contends that because the defenses were not available under the facts of Petitioner's case, defense counsel was not ineffective for failing to present either of them (*id.*).

The state court record demonstrates that Petitioner did not present the state courts with a federal due process claim based upon the trial court's failure to find that an entrapment or prescription defense precluded his conviction. Petitioner could have and should have presented this claim either on direct appeal or in his amended Rule 3.850 motion, but he did not (*see* Ex. B, Ex. N at 6–28).

Further, Petitioner has not shown cause for his failure to exhaust this due process claim. Petitioner did not present the state court with an IAAC claim based upon appellate counsel's failure to present a due process claim on direct appeal; therefore, he cannot rely upon it to overcome the procedural bar in this federal habeas case. *See* <u>Murray</u>, 477 U.S. at 488–89. Petitioner likewise has not shown cause for his failure to present a federal due process claim in his amended Rule 3.850 motion.

Therefore, Petitioner is not entitled to federal review of his federal due process claim.[15]

With respect to Petitioner's IATC claim, Petitioner claimed in Ground Two of his amended Rule 3.850 motion that trial counsel was ineffective for failing to present entrapment and "prescription" defenses (Ex. N at 14–19). The state court adjudicated the merits of Ground Two (*see id.* at 70–71). Therefore, the court will review the state court's adjudication to determine whether it was based upon an unreasonable determination of fact, or contrary to or an unreasonable application of clearly established federal law.

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the

---

[15] Even if Petitioner alleged that the state court's failure to provide counsel in the Rule 3.850 proceeding caused the procedural default of his due process claim, under the Supreme Court's decision in <u>Martinez v. Ryan</u>, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), his claim would be unsuccessful. <u>Martinez</u> applies only to claims of <u>ineffective assistance of trial counsel</u> that are otherwise procedurally barred. *See* <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) (declining to extend <u>Martinez</u> to a procedurally defaulted claim of ineffective assistance of <u>appellate</u> counsel); <u>Gore v. Crews</u>, 720 F.3d 811, 816 (11th Cir. 2013) (declining to extend <u>Martinez</u> to a procedurally defaulted claim that defendant was mentally incompetent to be executed).

proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla.

Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112).

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 694–95. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was

unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788.

As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

### 2.    Federal Review of State Court Decision

The state court adjudicated Petitioner's IATC claim as follows:

> Defendant claims counsel was ineffective for failing to raise the defenses of entrapment and having a valid prescription. Defendant fails to allege a sufficient basis for either defense. Where Defendant fails to show either defense was viable, counsel is not ineffective. *See Panagiotakis v. State*, 619 So. 2d 345, 346 (Fla. 2d DCA 1993).
>
> A valid prescription is a defense to trafficking when the charge is based on possession of a trafficking amount. *See Smith v. State*, 965 So. 2d 176, 177–178 (Fla. 2d DCA 2007). Defendant alleges he had innumerable prescriptions for his medication. However, Defendant's potential defense of having a valid prescription is without merit, as the testimony and argument were that he sold 50 hydrocodone pills to an undercover agent.
>
> As to the entrapment defense, Defendant alleges he visited the pawnshop and pawned some legal items and was quizzed by an

undercover agent about Lortabs.  He argues the government may not originate a criminal design and induce the commission of a crime.

Defendant fails to allege some sort of egregious law enforcement conduct or that he was induced into a drug sale he had no predisposition in which to participate.  *See Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993); *Schwartz v. State*, 125 So. 3d 946, 951 (Fla. 4th DCA 2013); *Black v. State*, 41 So. 3d 423, 425 (Fla. 1st DCA 2010).  Therefore, Defendant fails to allege sufficient facts to show he had a viable entrapment defense.

(Ex. N at 70–71).  The First DCA affirmed the decision without written opinion (Ex. P).

To the extent Petitioner's IATC claim is based upon defense counsel's failure to assert entrapment and prescription defenses under Florida state law, this court must defer to the state court's determination that Petitioner had no viable entrapment or prescription defense under Florida law.  Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of <u>Strickland</u>, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."  <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n

the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted);[16] *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec 'y Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal

---

[16] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in Alvord, Callahan, and Herring, the state court has already answered the question of whether Petitioner had a viable entrapment or prescription defense under state law—he did not. This court must defer to the state court's determination of state law. The failure by Petitioner's counsel to present either defense cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to present these state law defenses. Therefore, Petitioner is not entitled to relief based upon defense counsel's failure to present affirmative defenses based upon state law.

The next question is whether the state court reasonably rejected Petitioner's IATC claim to the extent it was based upon defense counsel's failure to present an entrapment defense based upon federal due process principles. The Supreme Court has declined to recognize the existence of a due process defense grounded in the United States Constitution that focuses solely on the government's alleged misconduct without regard to the defendant's predisposition. In United States v. Russell, 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973), a defendant was charged with unlawfully manufacturing methamphetamine and unlawfully selling and delivering

that drug.  411 U.S. at 424.  The defendant went to trial and asserted the federal

statutory defense of entrapment.  *Id.*  On appeal, the defendant conceded that the jury

could have found him predisposed to commit the offenses, but argued that on the facts

presented, there was entrapment as a matter of law.  *Id.* at 427.  The Ninth Circuit

reversed the conviction for the reason that the undercover agent investigating the

defendant had supplied an essential chemical (propanone) for manufacturing the

methamphetamine.  The Ninth Circuit concluded that as a matter of law "a defense to

a criminal charge may be founded upon an intolerable degree of governmental

participation in the criminal enterprise."  United States v. Russell, 459 F.2d 671 (9th

Cir. 1972).  The Supreme Court reversed, holding that the Ninth Circuit "in effect

expanded the traditional notion of entrapment, which focuses on the predisposition of

the defendant, to mandate dismissal of a criminal prosecution whenever the court

determines that there has been 'an intolerable degree of governmental participation

in the criminal enterprise.'"  Russell, 411 U.S. at 427.  The Supreme Court rejected

the defendant's invitation to "reconsider the theory of the entrapment defense" by

making the defense "rest on constitutional grounds," and it rejected the defendant's

argument that the same factors which led the Court to apply the exclusionary rule to

illegal searches and seizures and confessions should lead the Court to bar prosecutions

"because of the police involvement in criminal activity." *Id.* at 430. The Court stated that "[t]he analogy is imperfect," because the "the principal reason behind the adoption of the exclusionary rule was the Government's 'failure to observe its own laws,'" whereas the government's conduct in <u>Russell</u> "violated no independent constitutional right of the respondent. Nor did [the law enforcement officer] violate any federal statute or rule or commit any crime in infiltrating the respondent's drug enterprise." *Id.* at 430. The Court noted:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf.* <u>Rochin v. California</u>, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), the instant case is distinctly not of that breed. [The law enforcement agent's] contribution of propanone to the criminal enterprise already in process was scarcely objectionable. The chemical is by itself a harmless substance and its possession is legal. While the Government may have been seeking to make it more difficult for drug rings, such as that of which respondent was a member, to obtain the chemical, the evidence . . . shows that it nonetheless was obtainable. The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment. <u>Kinsella v. United States ex rel. Singleton</u>, 361 U.S. 234, 246, 80 S. Ct. 297, 304, 4 L. Ed. 2d 268 (1960).

<u>Russell</u>, 411 U.S. at 431–32.

Three years later, in <u>Hampton v. United States</u>, 425 U.S. 484, 96 S. Ct. 1646, 48 L. Ed. 2d 113 (1976), a defendant again argued to the Court that the government's

allegedly egregious conduct (supplying a government informant with heroin which

the defendant then sold to an undercover government agent) violated the defendant's

due process rights and provided an absolute bar to his prosecution, regardless of his

predisposition to commit the crime. 425 U.S. at 488–89. The Supreme Court again

rejected the defendant's invitation to create a new, constitutionally-based defense

based on the government agent's acts, and held that "[t]he remedy of the criminal

defendant with respect to the acts of Government agents, which, far from being

resisted, are encouraged by him, lies solely in the defense of entrapment." *Id.* at 490.

The Court said:

> The limitations of the Due Process Clause of the Fifth Amendment come
> into play only when the Government activity in question violates some
> protected right of the Defendant. . . . If the result of the governmental
> activity is to "implant in the mind of an innocent person the disposition
> to commit the alleged offense and induce its commission . . .," Sorrells
> [v. United States, 287 U.S. 435, 441, 448, 452, 53 S. Ct. 210, 77 L. Ed.
> 413 (1932)], the defendant is protected by the defense of entrapment. If
> the police engage in illegal activity in concert with a defendant beyond
> the scope of their duties the remedy lies, not in freeing the equally
> culpable defendant, but in prosecuting the police under the applicable
> provisions of state or federal law. *See* O'Shea v. Littleton, 414 U.S. 488,
> 503, 94 S. Ct. 669, 679, 38 L. Ed. 2d 674, 687 (1974); Imbler v.
> Pachtman, 424 U.S. 409, 428–429, 96 S. Ct. 984, 994, 47 L. Ed. 2d 128,
> 142–143 (1976). But the police conduct here no more deprived
> defendant of any right secured to him by the United States Constitution
> than did the police conduct in Russell deprive Russell of any rights.

Hampton, 425 U.S. at 490–91.

The question of whether government involvement in a criminal scheme rises to the level of a due process violation "turn[s] on the totality of the circumstances, with no single factor controlling." United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984); United States v. Tobias, 662 F.2d 381, 387 (5th Cir. 1981).  The defense is only available in the "rarest and most outrageous circumstances." Tobias, 662 F.2d at 387.

To date, the undersigned is unaware of any Supreme Court or Eleventh Circuit case where the court determined that the conduct of law enforcement agents was so "outrageous" as to support a defense of entrapment based upon the federal Constitution.  The facts which Petitioner presented to the state court fall far short of showing that trial counsel was deficient for failing to present an entrapment defense based upon federal law.  Petitioner admits that he initiated the first contact with law enforcement on April 20, 2011, by going to the pawn shop carrying his bottle of prescription pills.  When Deputy Gilmore inquired as to whether Petitioner would sell his pills, Petitioner readily sold them to Gilmore.  Thereafter, Petitioner was perfectly willing to repeatedly sell prescription pills to Gilmore, including the sale on July 8, 2011, which led to the trafficking charge in the instant case.  Thus, to the extent Petitioner's IATC claim was based upon defense counsel's failure to assert an

entrapment defense under federal law, the state post-conviction court reasonably rejected it.

As a final matter, the court notes that Petitioner references an entrapment-by-estoppel defense.  Petitioner did not mention this defense to the state court in his Rule 3.850, but notwithstanding his failure to do so, defense counsel was not ineffective for failing to assert it, nor did the state trial court err in failing to apply it.  Although federal courts have recognized an "entrapment-by-estoppel" defense to violations of federal criminal statutes, *see* United States v. Alvarado, 808 F.3d 474, 484 (11th Cir. 2015), the Florida courts have not recognized such a defense to violations of Florida criminal statutes.

But even if it were a cognizable defense in Florida, Petitioner failed to show that there was a factual basis for its application in his case.  "Entrapment-by-estoppel is an affirmative defense that provides a narrow exception to the general rule that ignorance of the law is no defense."  United States v. Funches, 135 F.3d 1405, 1407 (11th Cir. 1998).  "To assert this defense successfully, a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable—given the identity of the official, the point of law represented, and the substance of the misrepresentation."  *Id.*  The defense "focuses on the conduct

of the government officials, not on the state of mind of the defendant." <u>United States v. Thompson</u>, 25 F.3d 1558, 1564 (11th Cir. 1994).

Here, Petitioner does not allege any facts suggesting that he knew that Deputy Gilmore was a government official; instead, he simply believed that Gilmore was a pawn shop employee. It was not objectively reasonable for Petitioner to rely upon the representations of a pawn shop employee as to the legality of Petitioner's selling his prescription pills. Therefore, Petitioner had no basis to assert an entrapment-by-estoppel defense. *See, e.g.*, <u>United States v. Clarke</u>, 159 F. App'x 128, 131 (11th Cir. 2005) (unpublished but recognized as persuasive authority) (trial court properly denied request for jury instruction on defense of entrapment-by-estoppel based upon representations made by undercover detective posing as travel agent who connected clients with prostitutes, because a reasonable person would not rely upon a pimp for legal guidance).

Petitioner failed to demonstrate that the state court's adjudication of his exhausted claims was contrary to or an unreasonable application of clearly established federal law; and Petitioner failed to demonstrate that his unexhausted claims have any merit. Therefore, Petitioner is not entitled to federal habeas relief on Grounds Four and Five.

D.  <u>Ground Six: "The Petitioner avers the claims that the conviction violates the Ex Post Facto Clause are reviewed de novo, lowering the quantum of evidence, and other Ex Post Facto violations are reviewed under the same standard."</u>

Petitioner alleges the State charged him with "unlawfully and knowingly" selling hydrocodone, based upon Deputy Gilmore's statement in his probable cause affidavit, that Petitioner "knowingly" sold hydrocodone on July 8, 2011 (ECF No. 6 at 14; ECF No. 7 at 34–37).  Petitioner alleges the State subsequently argued, and the trial court agreed, that the State was not required to prove that Petitioner knew of the illicit nature of the substance he sold (*id.*).  Petitioner contends this retroactively eliminated an element of the crime, in violation of the Ex Post Facto Clause (*id.*).

Respondent contends this claim is untimely, unexhausted, and without merit (ECF No. 18 at 21–25).

Notwithstanding any timeliness or exhaustion issues, Petitioner's ex post facto claim is without merit.  The Ex Post Clause provides simply that "[n]o State shall . . . pass any . . . ex post facto Law."  Art. I, § 10, cl. 1.  The most well-known and oft-repeated explanation of the scope of the Clause's protection was given by Justice Chase, who long ago identified, in dictum, four types of laws to which the Clause extends:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798) (seriatim opinion of Chase, J.) (emphasis deleted); *accord*, Carmell v. Texas, 529 U.S. 513, 521–25, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000); Collins v. Youngblood, 497 U.S. 37, 41–42, 46, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990).

Here, the Florida Legislature eliminated "knowledge of the illicit nature of a controlled substance" as an element of any offense under Chapter 893, but it did so effective May 13, 2002. *See* Fla. Laws 2002, c. 2002-258, § 1, eff. May 13, 2002. Petitioner's trial was on February 5, 2013, over ten years after the effective date of the statute. Therefore, application of the statute was not retroactive and thus did not violate the Ex Post Facto Clause. Petitioner is not entitled to federal habeas relief on Ground Six.

      E.      Ground Seven: "W]hether lower tribunal circumvented Florida rule and procedure and the Petitioner's Constitutional rights have been trampled upon and multiple errors occurred which resulted in cumulative error."

Petitioner claims that the cumulative effect of errors in his case deprived him of a fundamentally fair trial (ECF No. 6 at 14; ECF No. 7 at 38–39).

Respondent contends Petitioner is not entitled to relief on this claim, because it is vague and conclusory, unexhausted, and without merit (ECF No. 18 at 25–28).

The state court record demonstrates that Petitioner did not present a claim of "cumulative effect" to the state courts on direct appeal or in his Rule 3.850 motion (*see* Ex. B, Ex. N at 6–28). Notwithstanding Petitioner's failure to exhaust, he is not entitled to federal habeas relief on his claim. Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[17] the Eleventh Circuit has never expressly recognized, in a § 2254 proceeding, a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered a state criminal trial fundamentally unfair even

---

[17] *See* United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (internal quotations and citations omitted); United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995) and citing United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996)).

though such errors were individually harmless or non-prejudicial.  *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).

In any event, cumulative effect analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (cumulative error claim

fails in light of the absence of any individual errors to accumulate); <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist).

Here, Petitioner has not shown error of a constitutional dimension with respect to any of the errors alleged in his § 2254 petition.  Therefore, he is not entitled to federal habeas relief on this "cumulative error" claim.

## V.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has

shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" <u>Buck v. Davis</u>, 580 U.S.—, 137 S. Ct. 773 (2017) (citing <u>Miller-El</u>, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (ECF No. 6) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 29th day of August 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**